# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| TUDOR INSURANCE COMPANY, ) <br>   a corporation ) <br> ) <br>   Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BWW INC. DBA SERVPRO WW10, ) <br>   a corporation; ) <br> PHILIP C. CROWE and RITA FAYE ) <br> CROWE, ) <br> individuals ) <br> ) <br>   Defendants. ) | Case No.:   1:09-cv-00025-HGD |

## PLAINTIFF TUDOR INSURANCE COMPANY'S RESPONSE BRIEF TO DEFENDANT SERVPRO'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the plaintiff, Tudor Insurance Company ("Tudor"), and responds to Defendant Servpro WW10's ("Servpro") Motion for Summary Judgment. In support, Tudor states that Servpro has not met its burden of proof that coverage is afforded under the subject policy for the claims and allegations of the underlying complaint.

1

**STATEMENT OF UNDISPUTED FACTS**

**I.      Response to Servpro's Statement of Undisputed Facts.**

Plaintiff Tudor does not dispute any of the facts presented in Servpro's Statement of Undisputed Facts in its Motion for Summary Judgment.

**II.     Additional Undisputed Facts.**

1. This is a complaint for declaratory judgment regarding insurance coverage, if any, afforded under Tudor's insurance policy issued to defendant BWW Inc. dba Servpro WW10 ("Servpro") for the claims and allegations contained in Plaintiffs' Second Amended Complaint styled *Phillip C. Crowe and Rita Faye Crowe v BWW, Inc. d.b.a Servpro of Birmingham*, et al filed against it in the Circuit Court of Talladega County, Alabama, Civil Action Number 2006-0198 ("Underlying lawsuit")(Exhibit A).

2. The claims against Servpro in the underlying lawsuit arise from Servpro's remediation of raw sewage that had overflowed from a sewer line into the Crowe's house. The remediation took place in April, 2005. (Exhibit A – pg.1 and 2, para. 5)

3. Approximately eight months following the remediation, the Crowes had their home inspected by a certified industrial hygienist who advised them that the house tested positive for bacteria contamination. (Exhibit A – pg. 1 and 2, para. 5)

4. The Crowes contend in the underlying complaint that Servpro "placed fans and air moving equipment that caused raw sewage and bacteria to spread throughout the home." (Exhibit A – pg.10, para. 43)

5. The underlying lawsuit asserts claims for negligent/wanton remediation, negligent/wanton training and supervision, breach of contract, misrepresentation and suppression. (Exhibit A –pgs. 11-17; para. 43, 47, 51, 55, 59, 63, 67 and 76)

6. Tudor issued a commercial general liability policy, policy number PGL 724444 with a policy period of September 13, 2004 to September 13, 2005 to Servpro. (Exhibit B – pg.1)

7. Tudor Policy number PGL 724444 contains a Total Pollution Exclusion with Hostile Fire Exclusion (Exhibit C) which provides in pertinent part as follows:

> This insurance does not apply to:
>
> **f. Pollution**
>
> **(1)** " Bodily Injury" or "Property Damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.
>
> * * *

## **ARGUMENT**

Tudor incorporates by reference, as if cited fully herein, the arguments made by it in Plaintiff Tudor Insurance Company's Memorandum in Support of Its Motion for Summary Judgment previously filed with this court in opposition to Defendant Servpro WW10's Motion for Summary Judgment. (Attached as Exhibit D to Plaintiff Tudor Insurance Company's Evidentiary Submission in Response to Defendant Servpro WW10's Motion for Summary Judgment)  In addition, Plaintiff Tudor Insurance Company makes the following arguments:

### **I. The Total Pollution Exclusion Is Not Ambiguous.**

Defendant Servpro argues the Absolute Pollution Exclusion contained in the subject policy is ambiguous because the definition of "pollutant" includes the terms "irritant" and "contaminant" and that these terms are "virtually boundless" because there is no substance or chemical in existence that would not irritate or damage a person or property. This same argument, however, used by an insured arguing that an Absolute Pollution exclusion was ambiguous, was rejected by the Alabama Supreme Court in *Federated Mutual Ins. Co. v Abston Petroleum, Inc.*, 967 So.2d 705 (Ala. 2007).

In *Abston*, gasoline leaked from an underground storage tank. A lawsuit was filed against the owner of the property regarding the leak. The owner/insured's policy

contained an Absolute Pollution Exclusion. The insured argued that the exclusion was ambiguous because gasoline was not listed as a "pollutant" and that because gasoline was a useful substance it was not a "pollutant." The court in holding that the Absolute Pollution exclusion was not ambiguous and that gasoline was a "pollutant" stated as follows:

> We conclude that the better-reasoned approach is that applied by the majority of courts that have reviewed a **pollution-exclusion** identical to or markedly similar to the clause in the Federated Mutual policy before us…
>
> We hold that gasoline, although not a pollutant when properly used for purposes for which it is intended, is clearly a pollutant when it leaks into the soil from underground tanks…..The simple fact that gasoline serves a vital purpose when released from a properly constructed tank into the confines on an internal combustion engine does not permit us to blink reality and overlook deleterious consequence that occur when gasoline is introduced into the soil or when its fumes escape into the atmosphere.

Even if Servpro wanted to use this argument, the case at bar does not involve a situation were a useful substance contaminated something. What happened here is that raw sewage which has no useful purpose contaminated a house. It is impossible to come up with a useful purpose of raw sewage or a situation where contact with raw sewage would not result in "contamination."

Defendant Servpro argues that the subject policy limits "pollutants" to "irritants" and "contaminants" that are "solid, liquid, gaseous or thermal" and that bacteria does not

fit within this definition. According to Servpro, bacteria does not fit within these categories because bacteria are living organic irritants or contaminants that defy the description of "solid," "liquid," "gaseous," or "thermal" pollutants. As discussed in Exhibit D to Plaintiff Tudor Insurance Company's Evidentiary Submission in Response to Defendant Servpro WW10's Motion for Summary Judgment, the courts in *Landshire Fast Foods of Milwaukee, Inc. v Employers Mut. Cas. Co*, 676 N. W. 2d 775, 269 Wis.2d 775 (Wis.App. 2004) and *Nova Cas. Co. v Wasertein*, 424 F. Supp.2d 1325 (S.D. Fla. 2006), rejected this argument and held that bacteria does fall within the definition of "contaminant."

The Court in *Nova Cas. Co. v Wasertein*, 424 F. Supp.2d 1325 (S.D. Fla. 2006) in responding to the argument made by an insured that bacteria was not a "solid, liquid, gaseous or thermal" contaminant stated as follows:

> There is nothing in the plain meaning of the term "solid" that limits it to non-living, or non-organic irritants and contaminants. The dictionary definition of "solid" certainly does not preclude living or organic things from being described as a "solid." See WEBSTER'S NEW WORLD COLLEGE DISTIONARY 1364 (4th ed. 2000) (defining "solid" as "tending to keep its form rather to flow or spread out like a liquid or gas; relatively firm or compact [:]"); WEBSTRERS THIRD NEW INTERNATIONAL DISCTIONARY 2169 (4th ed. 1976) (defining "solid" as "marked by density or compactness: of uniformity close and coherent texture or consistency; not disintegrated, loose or spongy [;] … being neither liquid nor gaseous."); SHORTER OXFORD ENGLISH DICTIONARY 2915 (5th ed. 2002) (defining "solid" as "of a material substance; of dense or massive consistency; firmly coherent; hard and compact").

6

> Moreover, the dictionary definitions of "organism" and "microbe" support the view that they are solid objects. An "organism" is defined as any "individual animal, plant, bacterium, etc. having various parts or systems that function together as a whole to maintain life and its activities[;]" WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1016 (4th ed. 2000)…These parts and systems functioning together as a whole, ordinarily connote something that has some close and coherent texture or consistency, albeit microscopic in size, and thus, connote something "solid."

The court went on to state that to interpret the clause otherwise would require the court to rewrite the definition of "pollutant" to read "non-living, non-organic solid, liquid, gaseous or thermal irritant, "something that the court was prohibited from doing under Florida law." The same is true under Alabama law which prohibits a court from re-writing the terms of a policy or interpreting unambiguous language so as to provide coverage that was not intended by the parties. *Taylor v Aetna Life Ins. Co.*, 54 F. Supp. 2d 1076 (M.D. Ala. 1999) If the words used in an insurance policy are reasonably certain in their meaning, they are not ambiguous as a matter of law, and the rule of construction favoring the insured does not apply. *In re Health South Corp.*, 308 F. Supp. 2d 1253 (N.D. Ala. 2004)

"Pollutant" is defined in Tudor's policy as follows:

> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Servpro argues that the Total Pollution exclusion delineates the type of contaminants or irritants included within the definition of "pollutant", i.e. "including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Normally, the word "including" generally indicates that unlisted items may nevertheless fall within the definition. Servpro argues that, under the rule of *ejusdem generis,* the use of the word "including" requires that any unlisted items have to be similar in nature to the listed items.

The rule of *ejusdem generis*, however, is invoked as an aid in construing an ambiguity in a policy. If the language is clear, there is no question of interpretation or construction requiring one to resort to such rules to discern the intent of the parties. *Illinois National Ins. Co. v Castro*, 887 So.2d 281 (Ala. 2003) As discussed above, it is clear that the term "solid" would include living organisms such as bacteria. Thus, there is no reason for the rule of *ejusdem generis* to be invoked in determining whether bacteria is a "pollutant."

Even if the court were to invoke the doctrine of *ejusdem generis*, bacteria would be included as a "solid." The purpose of listing such things as smoke, vapor and fumes is to include "solids" that may be suspended in a gas such as air. Smoke is nothing more than fine particles of carbon, a "solid", suspended by hot gases and air. Vapor is the mixture of fine particles of a solid or liquid with air. Under Servpro's argument, the word "solid"

would exclude "solids" suspended in air or other gases.

Servpro also argues that the decision in *Molton, Allen and Williams, Inc. v St. Paul Fire and Marine Insurance Co.*, 347 So.2d 95 (Ala. 1977) supports its argument that the use of the rule *ejusdem generic* results in the interpretation of the pollution exclusion so that it is limited to industrial pollution and contamination. This decision was discussed in Exhibit D to Plaintiff Tudor Insurance Company's Evidentiary Submission in Response to Defendant Servpro WW10's Motion for Summary Judgment previously filed. Exhibiit D discussed in detail that the *Molten* decision interpreted a qualified pollution exclusion which the court found to be ambiguous before applying the principal of *ejusdem generis*. As discussed in Exhibit D, the limiting language in the exclusion that resulted in the interpretation of the exclusion only applying to industrial pollution and contamination was removed by the Total Pollution exclusion contained in Servpro's policy. Even if one were to assume that the pollution exclusion was limited to industrial pollution, it would still be applicable to the case at bar because Servpro was involved in the industrial endeavor in performing a remediation of raw sewage that backed up into plaintiff's home from the City sanitary sewer system. It is not a situation like the court was faced with in *Molten* involving the erosion of sand.

Servpro also cites *U.S.F.& G. v Armstrong, 479 So.2d 1164 (ala. 1985)* for the proposition that the subject Total Pollution exclusion applies only to industrial pollution.

As discussed in Exhibit D to Plaintiff Tudor Insurance Company's Evidentiary Submission in Response to Defendant Servpro WW10's Motion for Summary Judgment, *Armstrong* interpreted a "qualified pollution exclusion" which is substantially different from the Total Pollution exclusion contained in Servpro's policy.

## **CONCLUSION**

Based upon the applicable law, the Total Pollution exclusion is not ambiguous and operates to exclude coverage for the claims and allegations against Servpro contained in the underlying complaint. Hence, there is no duty on the part of Plaintiff Tudor to defendant or indemnify Defendant Servpro for the claims and allegations contained in the underlying complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tudor requests this Honorable Court to deny Defendant Servpro's motion for summary judgment.

/s/ W. Scott McGarrah
**W. Scott McGarrah, III (MCG005)**

/s/ Teresa. D. Davenport
**Teresa D. Davenport (DAV074)**
Attorneys for plaintiff,
TUDOR INSURANCE COMPANY

**OF COUNSEL:**

ALLEN, KOPET & ASSOCIATES
Post Office Box 43548
Birmingham, AL 35243
(205) 972-8989

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this the __4__ day of January , 2010, served a copy of the foregoing on the following parties:

Bradley J. Smith, Esq.
CLARK, HAIR & SMITH, PC
1000 Urban Center, Suite 125
Birmingham, AL 35242

W. Brian Collins, Esq.
COLINS & DOWNEY
2021 Morris Avenue
Birmingham, AL 35203

                                         /s/ W. Scott McGarrah
                                         OF COUNSEL